UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| HARDINGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:10 CV 33 PPS |
| ) | |
| EMERSON TRANSMISSION ) | |
| POWER COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |
| ) | |
| GARY BARNEKO, ) | |
| ) | |
| Intervenor/Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| EMERSON POWER TRANSMISSION ) | |
| CORP., and SEDGWICK CLAIMS ) | |
| MANAGEMENT SERVICES, INC., ) | |
| in its capacity as administrator for ) | |
| subrogee EMERSON POWER ) | |
| TRANSMISSION CORP., ) | |
| ) | |
| Defendants/Respondents. ) | |
| ) | |

## OPINION AND ORDER

Before the Court is Plaintiff Gary Barneko's Motion to Remand and for Attorney Fees and Costs. [DE 7.] For the following reasons, Barneko's motion to remand is **GRANTED**, with each party to bear its own attorneys' fees and costs.

## BACKGROUND

Gary Barneko seriously injured his hand while operating a lathe at work. [DE 1 ¶ 5.]

Pursuant to the Indiana Workers' Compensation Act, Barneko sought worker's compensation benefits from his employer, Defendant Emerson Power Transmission Corp. [*Id.* ¶ 8.] As a result, Emerson and its claims manager, Defendant Sedwick Claims Management Services, Inc. paid Barneko roughly $98,274.79 in medical and disability benefits, though this amount is in dispute.[1] [*Id.*; DE 2 ¶ 8.] (For convenience sake I will refer to both Defendants collectively as "Emerson").

Barneko also filed a product liability action in Illinois state court against Hardinge Inc., the manufacturer and supplier of the lathe, claiming that his injuries were the result of a manufacturing defect in the lathe. [DE 1 ¶ 7; DE 20 at 3.] The parties settled the suit for $585,000. [DE 1 ¶ 7.] Following the settlement, Emerson asserted a lien on the settlement proceeds equal to the amount of worker's compensation benefits that Emerson paid Barneko. [DE 1 ¶ 8; DE 20 at 3.]

Barneko then brought this action for declaratory judgment in Porter Superior Court seeking a judgment invalidating, or significantly reducing, any lien Emerson may have on the settlement proceeds. [DE 1.] Emerson filed a timely notice of removal to this Court on diversity grounds. [DE 2.] I then asked Emerson to show cause why 28 U.S.C. §1445(c) did not bar removal because the cause of action arose under Indiana's workers' compensation laws. [DE 6.]

---

[1] In his original petition, Barneko claims Emerson paid him $98,274.79 in disability payments and medical expenses. [DE 1 at 3.] And Emerson initially agreed, stating in its Petition for Removal that its lien totaled $98,274.79. [DE 2 ¶ 8.] But Emerson then amended its petition twice. In its Amended Petition for Removal, Emerson alleged that it paid Barneko $115,889.00 in benefits, though it now admits that was a good faith miscalculation. [DE 20 at 4 n.2.] Then Emerson filed a Second Amended Petition for Removal, alleging that its lien totaled $97,683.59. [DE 21 ¶ 7.] For purposes of this motion, I assume Emerson paid Barneko $98,274.79 in disability payments, as originally set forth by both parties. Notably, the difference between the two numbers is not dispositive in determining the amount in controversy.

Shortly thereafter, Barneko filed this motion seeking a remand to Porter Superior Court arguing the action is nonremovable under 28 U.S.C. § 1445(c) and, in any event, the amount in controversy does not exceed $75,000. [DE 7.] Barneko also seeks his attorney fees and costs under 28 U.S.C. § 1447(c).

## DISCUSSION

A party seeking removal has the burden of establishing that federal jurisdiction is appropriate. *See Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995). Emerson removed this case under the Court's diversity jurisdiction. Pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332, a defendant may remove a case to federal court where the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 and 1441.

But Congress created an exception to that rule. Under 28 U.S.C. § 1445(c), "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). Section 1445(c) thus bars removal of all workers' compensation actions to federal court. *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031, 1038 (7th Cir. 1987). The purpose of § 1445(c) was "to help ease the burden on the federal court dockets" by preventing removal of state-law claims under federal diversity jurisdiction. *Id.*; *Burda v. M. Ecker Co.*, 1990 WL 17075, at *3 (N.D. Ill. Feb. 6, 1990); *see also Horn v. Kmart Corp.*, 2007 WL 1138473, at *5 (S.D. Ohio Apr. 16, 2007) (Congress intended to "decrease the number of cases in federal court based on diversity jurisdiction" and "relieve workers of the expense and delay of litigating in federal court").

In determining whether a cause of action "arises under" a state's workers' compensation

-3-

law, courts examine whether the suit "presents a dispute about the validity, construction, or effect of the law." *Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 725-26 (7th Cir. 1994). Merely serving as the background for a tort action is not enough. *Id*. Instead, the state's workers' compensation laws must either play a role in determining whether a plaintiff would prevail, or the claim must require inquiry or interpretation of the workers' compensation laws. *Hartford v. Schindler Elevator Corp.*, 2009 WL 3246670, at *3 (N.D. Ind. Oct. 6, 2009) (finding § 1445(c) inapplicable because plaintiff's claims could be adjudicated without "having to interpret, construe or resolve a controversy concerning Indiana state worker's compensation law"); *Spearman*, 16 F.3d at 725 (denying remand because claim could be adjudicated "without any inquiry" into workers' compensation laws).

So the first issue is whether this case is nonremovable because Barneko's claim arises under Indiana's workers' compensation laws. Pursuant to the Indiana Workers' Compensation Act, employers must compensate employees for injuries that occur during the course of their employment, regardless of fault. *Spangler, Jennings & Daugherty P.C. v. Indiana Insurance Co.*, 729 N.E. 2d 117, 120 (Ind. 2000). And in return, the employer has immunity from civil litigation from the employees. *Id*. This does not, however, preclude an employee from seeking damages from a third party for his injuries. Ind. Code § 22-3-2-13. But if the employee recovers damages from a third party, the employee must reimburse the employer in "the amount of compensation paid to the employee . . . plus the medical, surgical, hospital and nurses' services and supplies . . . paid by the employer." *Id*. Indeed, in such a case, the employer "shall have a lien upon any settlement award, judgment or fund out of which the employee might be compensated from the third party." *Id*.

Here, Emerson paid Barneko $98,274.79 in worker's compensation benefits as a result of Barneko's workplace injuries. Barneko then sued Hardinge, alleging that a defect in the lathe caused his injuries, and he recovered an additional $585,000. Thus, pursuant to Indiana Code § 22-3-2-13, Emerson asserted a lien against settlement proceeds that Barneko received from Hardinge in the amount of benefits Emerson paid to Barneko.

But in this action, Barneko asks for a judgment declaring that this lien is invalid or, alternatively, that it must be significantly reduced. First, Barneko argues any lien must be reduced by no less than 90% under the Indiana comparative fault statute, which proportionately diminishes a lien based on the parties' comparative fault. Ind. Code § 34-51-2-19; *see White v. Quality Express Tank Lines, Inc.*, 2007 WL 2700283, at *2 (N.D. Ind. Sept. 10, 2007) (applying Ind. Code § 34-51-2-19 to worker's compensation lien). Also, Barneko asserts that any recovery by Emerson must be reduced by one-third because Emerson must pay its share of attorney's fees and costs for the Hardinge litigation.

Emerson argues this is not enough to show that Barneko's claim "arises under" Indiana's workers' compensation laws. According to Emerson, there is no dispute over the existence of its lien on Barneko's recovery; the Workers' Compensation Act clearly provides as much. Instead, the conflict involves the extent the lien should be reduced based on the parties' comparative fault. Thus, this action does not turn on an application of the Workers' Compensation Act, but rather on the effect the Indiana comparative fault statute, Indiana Code § 34-51-2-19, has on Emerson's lien.

But Emerson ignores the fact that Barneko also seeks to have the lien reduced under the attorney's fees provision of the Workers' Compensation Act. Under Indiana Code § 22-3-2-13,

when an employee that received worker's compensation benefits because of a workplace injury recovers against a third party tortfeasor for those injuries, and the employer asserts a lien on that recovery, the employer must pay its share of share of costs, expenses, and attorney's fees in connection with the third party suit. Ind. Code § 22-3-2-13. The purpose of this provision is to prevent a windfall for the employer by "free[ing] the injured workman . . . from paying attorney['s] fees for legal services for recovering the equivalent of the employer or compensation insurance carrier subrogation claim." *Spangler*, 729 at N.E. 2d at 125.

That's precisely the situation here. Again, Barneko received worker's compensation benefits from Emerson and then damages from a third party tortfeasor that exceeded the amount of benefits paid by Emerson. So Emerson has a lien on Barneko's recovery from the third party. But to be reimbursed, Barneko argues that Emerson is responsible for its share of attorney's fees and costs in connection with the third party suit pursuant to the Workers' Compensation Act. In his original petition, however, Barneko mistakenly cites to Indiana Code § 34-53-1-2 for this proposition. Section 34-53-1-2 requires an insurer claiming subrogation or reimbursement rights to pay its pro rata share of attorney's fees and costs when the insured recovers from a third party. Ind. Code 34-53-1-2. But Emerson is not an insurer under § 34-53-1-2 but an employer claiming reimbursement under § 22-3-2-13; so § 34-53-1-2 does not apply to Emerson's Workers' Compensation Act lien. *See Barclay v. Universal Underwriters Group*, 703 N.E. 2d 169, 171 (Ind. App. 1998) (holding § 22-3-2-13, not § 34-53-1-2, is applicable to determine employer's obligation to pay attorney fees and costs in reimbursement claim under the Workers' Compensation Act); *Tunny v. Erie Insurance Co.,* 790 N.E. 2d 1009, 1014-15 (Ind. App. 2003) (noting substantive differences between the attorney fee provisions in § 22-3-2-13 and § 34-53-

1-2). Indeed, Indiana courts apply § 22-3-2-13 where "[a]t issue is the amount [the employer's] lien against that settlement should be reduced for the payment of attorney fees to [the employee's] counsel." *Barclay*, 703 N.E. 2d at 170. Thus, the attorney fees provision in § 22-3-2-13 applies to this case and is the relevant statute for assessing Emerson's share, if any, of attorney's fees and costs it must be pay as a result of Barneko's recovery in the Hardinge litigation.

Importantly, applying the attorney fee provision under § 22-3-2-13 will require more than simply subtracting the proportionate share of attorney's fees from Emerson's lien as a matter of course, and moving on. First, Emerson contends "there are genuine disputes as to the amount of fees, costs, and other factors that may be subtracted from the lien." (DE 20 at 5 (Emerson's Response)). Based on this, Emerson may challenge its obligation to even pay attorney's fees under § 22-3-2-13. Also, in addition to attorney's fees, Barneko seeks costs for litigating its third party claim. And § 22-3-2-13 controls the manner in which costs and expenses are assessed in relation to the employer's obligation to pay its proportionate share of attorney's fees. *See* Ind. Code § 22-3-2-13 (employer must pay its share of attorney's fees "of the amount of benefits actually repaid *after* deduction of costs and reasonably necessary expenses") (emphasis added). Furthermore, and perhaps most importantly, the parties dispute the total amount of Emerson's lien before any reduction, *see supra* n.1, a number that both parties agree is determined by the Workers' Compensation Act. *See* Ind. Code § 22-3-2-13 (the employer shall have a lien in "the amount of compensation paid to the employee . . . plus the medical, surgical, hospital and nurses' services and supplies . . . paid by the employer."); [DE 8 at 6-7; DE 20 at 4 n.2, Ex. 1 ¶ 2.]. Thus, inquiry and analysis of the Indiana Workers' Compensation Act will play

a role in determining Emerson's total lien amount; whether the lien should be reduced for attorney's fees and costs; and, if so, Emerson's proportionate share of fees and costs. And the fact that resolving Barneko's claim will also require an analysis of the parties' comparative fault is of no matter – "[e]ven a case containing a federal claim may not be removed if it *also* arises under state workers' compensation law." *Spearman*, 16 F.3d at 724 (emphasis in original).

Notably, this case is different from those in this circuit that have found an action removable because the plaintiff's claim did not arise under a state's workers' compensation laws. In *Spearman*, the Seventh Circuit held that a plaintiff's retaliatory discharge claim against his employer was removable despite 1445(c) because Illinois treated retaliatory discharge as a common law tort action rather than a claim arising under its workers' compensation laws. 16 F.3d at 725. But unlike here, the retaliatory discharge claim in *Spearman* could be adjudicated without inquiry into the state's workers' compensation laws. *Id*. And there is no independent tort driving this action. Also, the issue here involves a dispute between the employee and employer – the parties bound by the Workers' Compensation Act – rather than a tort action against a third party. *See Hartford*, 2009 WL 3246670, at *3 (negligence claim against third-party tortfeasor can be adjudicated without "having to interpret, construe or resolve a controversy concerning Indiana state worker's compensation law."); *Illinois ex rel. Secretary of Dept. of Transp. v. DeLong's Inc.*, 57 F. Supp. 2d 639, 641 (C.D. Ill. 1999) (negligence action against third party did not arise under worker's compensation laws); *Houston v. Newark Boxboard Co.*, 597 F. Supp. 989, 991 (E.D. Wis. 1984) (tort action against third party for injuries sustained in industrial accident removable). Moreover, unlike these cases, this action involves a dispute over a lien specifically created by the Indiana Workers' Compensation Act. *See Safety*

*Nat'l Cas. Ins., Corp. v. City of Burlington*, 2006 WL 399675, at *8 (M.D.N.C. Feb. 17, 2006) (finding dispute between employee and employer over lien created under North Carolina worker's compensation laws nonremovable under 1445(c)).

In sum, determining Emerson's lien, and the extent it should be reduced, will require inquiry into the "validity, construction, or effect" of the Indiana Workers' Compensation Act which makes this case nonremovable. *Spearman*, 16 F.3d at 725-26. Indeed, while this may not be a particularly grueling exercise, it is nonetheless outside my authority – Congress specifically barred federal courts from undertaking this type of analysis in removal actions. *See Lingle*, 823 F.2d at1038 (Section 1445(c) bars removal "to help ease the burden on the federal court dockets"). Moreover, any doubts regarding jurisdiction "should be resolved in favor of remand to spare the parties proceedings which might later be nullified should jurisdiction be found to be lacking." *Alexander v. Westinghouse Hittman Nuclear Inc.*, 612 F. Supp. 1118, 1122 (N.D. Ill. 1985); *Dombrowski v. Continental Can Co., Inc.*, 711 F. Supp. 433, 435 (N.D. Ill. 1989) (remanding under § 1445(c), in part, because any jurisdictional doubts warrant remand). Therefore, pursuant to § 1445(c), this action is remanded to Porter Superior Court.

Barneko seeks attorney's fees and costs under 28 U.S.C. § 1447 for having to bring this motion. Section 1447(c) states "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A district court may award attorney's fees under § 1447(c) where the removing party lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). To meet this standard, a plaintiff must show that at the time of removal "clearly established law" demonstrated no basis for removal. *Lott v. Pfizer, Inc.*,

492 F.3d 789, 793 (7th Cir. 2007). Therefore, I must determine whether clearly established law demonstrated that the case was nonremovable under § 1445(c) and that the amount in controversy did not exceed $75,000.

First, the law does not clearly establish this case was nonremovable under § 1445(c). Outside of the situation addressed in *Spearman*, which again, I find distinguishable, few cases in this circuit have analyzed § 1445(c) and none in the context presented here. In fact, Barneko did not even argue that the attorney fee provision in the Workers' Compensation Act made the case nonremovable until his Reply brief. So application of 1445(c) does not warrant an award of attorney's fees and costs.

Emerson also had an objectively reasonable basis for believing the amount in controversy exceeded $75,000. To show that a plaintiff's claim meets the amount in controversy requirement, a removing defendant must show "what the plaintiff hopes to get out of the litigation." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) ("[T]he removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover."); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (the removing party must show that the "stakes of the litigation" exceed $75,000). And then, "[o]nly if it is 'legally certain' that the recovery . . . will be less than the jurisdictional floor may the case be dismissed." *Meridian*, 441 F.3d at 543.

In his petition, Barneko seeks a judgment declaring that Emerson's $98,274.79 lien should be reduced by no less than 90% because of the parties' comparative fault. He also argues that Emerson is on the hook for its proportionate share of attorney's fees, which Barneko claims

equals one-third of Emerson's lien, plus costs. *See Spangler*, 729 N.E. 2d at 124 n.14 (assessing attorney fees under § 22-3-2-13 after reduction for comparative fault). Emerson argues, and I agree, that by applying these numbers to $98,274.78, simple math dictates that Barneko seeks to have Emerson's lien reduced by more than $75,000. Notably, Barneko is the plaintiff in this action; Emerson did not file suit to adjudicate its lien. Thus, because the stakes of the litigation exceed $75,000, Emerson's removal was objectively reasonable.

## CONCLUSION

For the foregoing reasons, Barneko's Motion to Remand is **GRANTED** [DE 7], with each party to bear its own attorneys' fees and costs. It is **ORDERED** that this case is **REMANDED** back to the Porter Superior Court. The clerk shall treat this civil action as **TERMINATED**. All further settings in this action are hereby **VACATED**.

**SO ORDERED**.

ENTERED: May 2, 2010

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT
